

**SIGNED this 06 day of October, 2008.**

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Glenda Mae Casey** | ) | **No. 08-10777** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **Georgia Lottery Corporation** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Adv. No. 08-1042** |
| | ) | |
| **Glenda Mae Casey** | ) | |
| | ) | |
| **Defendant** | ) | |

**M E M O R A N D U M**

This adversary proceeding is before the court on a motion for summary judgment filed by the plaintiff Georgia Lottery Corporation ("GLC"). The court has reviewed the motion, the

-1-

supporting brief, the statement of undisputed facts, and the supporting affidavit and exhibits.[1]

For the reasons stated below, the court will grant the motion.

### I.

The court finds that there is no genuine issue as to the following material facts. In September 2003, the parties entered into a Retailer Contract whereby debtor and defendant Glenda Mae Casey agreed to sell Georgia lottery tickets.[2] Paragraph 5 of the contract provides:

> <u>Electronic Funds Transfer.</u> Retailer shall have a fiduciary duty to preserve and account for all proceeds from the sale of lottery Tickets collected by it and shall be responsible and liable for all such proceeds. All proceeds from the sale of lottery Tickets and all other funds due the GIC shall constitute a trust fund in favor of the GLC until paid to the GLC. Subject to the [Georgia Lottery for Education] Act and the [GLC] Rules and Regulations, Retailer agrees[:] (i) to maintain for the purpose of this Retailer Contract a separate bank account in the name of the Retailer as "Trustee for the Georgia Lottery Corporation", with a bank acceptable to GLC which is a member of an automated clearing house association; [(ii)] to deposit daily into that bank account all proceeds from the sale of lottery Tickets and other funds due the GLC; (iii) to authorize GLC to initiate Electronic funds Transfer (EFT) to and from that account for the net settlement due from the sales of GLC lottery Tickets; and (iv) that sufficient funds shall be available in the designated account on the dates specified by GLC to cover the amounts due GLC, as determined by GLC.

---

[1] The defendant did not file a response to the motion or the statement of undisputed material facts or an affidavit or any other documents in opposition to the motion. Accordingly, "the respondent does not oppose the relief requested by the motion" and "the material facts set forth in the movant's statement will be deemed admitted." E.D. Tenn. LBR 7007-1(a), 7-56-1(b).

[2] The defendant signed the contract as "owner" and as "interim president and CEO" of State line Cash & Carry. It appears that that business was not incorporated, but was a sole proprietorship owned by the defendant.

The Georgia Lottery for Education Act, to which the debtor agreed in the Retailer Contract to be bound, also provides that retailers hold the proceeds of lottery ticket sales in trust for GLC. Code Ga. Ann. § 50-27-21(a).

For the accounting weeks ended March 3, 2007, through October 6, 2007, the debtor sold Georgia lottery tickets, but did not deposit all the proceeds into the required separate bank account. Specifically, for the week ended May 19, 2007, the debtor sold tickets the proceeds of which (net of the debtor's commissions) totaled $6,100.12, but there were no funds on deposit in the separate account at the end of that week. Similarly, for the week ended September 15, 2007, the debtor sold tickets the net proceeds of which totaled $3,378.32, but there were no funds on deposit in the separate account at the end of that week. Likewise, for the week ended September 29, 2007, the debtor sold tickets the net proceeds of which totaled $8,042.06, but there were no funds on deposit in the separate account at the end of that week. Finally, for the week ended October 6, 2007, the debtor sold tickets the net proceeds of which totaled $15,301.34, but there were no funds on deposit in the separate account at the end of that week. The debtor has admitted that she "did not preserve, account for, and deliver all lottery proceeds to Georgia Lottery Corporation," but "used lottery proceeds to cover the general operating expenses of [her] business." (Plaintiff's First Requests for Admissions to Defendant Glenda Mae Casey ¶¶ 6-7.[3])

---

[3]Under Fed. R. Civ. P. 36(a)(3), made applicable in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7036, a matter set forth in a request for admissions is deemed admitted unless a written answer or objection to the matter is served within 30 days. The plaintiff served the requests for admissions on July 16, 2008, and no written answer or objection has been served.

GLC thereafter recouped a portion of the sale proceeds then filed suit for the rest in the Superior Court of Dade County, Georgia. The debtor consented to judgment in the amount of $22,207.74. In the Consent Judgment, which was entered on January 29, 2008, the debtor acknowledged that –

> she has a fiduciary duty to preserve and account for Lottery proceeds collected by her, that all proceeds from the sale of lottery tickets are held in trust until collected or paid over to the Georgia Lottery Corporation, and that she shall be liable for all such proceeds. Defendant admits that she has breached this fiduciary duty by failing to remit to plaintiff all sums of money due from the sale of Lottery tickets.

The Consent Judgment provided that the judgment amount would be paid at the rate of $300 per month for fifteen months and thereafter at the rate of $500 per month.

The debtor made only one $300 payment on the judgment. Then, on February 18, 2008, she filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing the above-styled case. On April 18, 2008, GLC filed the complaint initiating this adversary proceeding. The complaint seeks a determination that the debtor's indebtedness to GLC is nondischargeable under 11 U.S.C. § 523(a)(4) and (6).

## II.

Section 523(a)(4) of the Bankruptcy Code provides, in pertinent part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." "A 'defalcation' encompasses not only embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for such funds.' A debt is nondischargeable as a defalcation when the prepon-

derance of the evidence establishes: '(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.'" *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir.1985); *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)). To establish "fraud or defalcation while acting in a fiduciary capacity," a creditor must prove the existence of an express or technical trust. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997); *accord*, *e.g.*, *Bucci*, 493 F.3d at 639 ("In *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir.1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity.").

As at least two Georgia bankruptcy courts have explicitly held, there is no question that the Retailer Contract and the Georgia Lottery for Education Act create an express or technical trust as required for the application of § 523(a)(4). *Suwannee Swifty Stores, Inc. v. Ga. Lottery Corp. (In re Suwannee Swifty Stores, Inc.)*, 266 B.R. 544, 549-550 (Bankr. M.D. Ga. 2001), *aff'd*, No. 6:01-CV-53 (CDL) (M.D. Ga. June 3, 2002), *aff'd*, 67 F. App'x 583 (11th Cir. Apr. 28, 2003); *Ga. Lottery Corp. v. Daniel (In re Daniel)*, 225 B.R. 249, 250-52 (Bankr. N.D. Ga. 1998). Moreover, as several courts have held, the "failure to deposit lottery proceeds in a dedicated bank account is a defalcation under § 523(a)(4)." *Ga. Lottery Corp. v. Sadler (In re Sadler)*, Ch. 7 Case No. 04 33688, Adv. No. 05-3013, 2007 WL 625915, at *3 (Bankr. M.D. Ala. Feb. 26, 2007) (citing *Ga. Lottery Corp. v. Farhan (In re Farhan)*, 2004 Bankr. LEXIS 2267 (Bankr. N.D. Ga. Sept. 20, 2004); *Ga. Lottery Corp. v. Thompson (In re Thompson)*, 296 B.R.

563, 566 (Bankr. M.D. Ga. 2003) (citing *Daniel)*, 225 B.R. at 252; *Ga. Lottery Corp. v. Finley (In re Finley)*, Ch. 7 Case No. A 97-75294-ADK, Adv. No. 97-6684 (Bankr. N.D. Ga. Oct. 21, 1998)); *Ga. Lottery Corp. v. Washington (In re Washington)*, Adv. No. 01-1079A (Bankr. S.D. Ga. May 23, 2002)).

There is no genuine issue that the debtor, at the very least, failed properly to account for funds she held in trust by contract and by statute, and that GLC suffered a loss in the amount of $21,907.74 as a result. Indeed, the debtor herself has admitted these facts.[4] Accordingly, the court concludes that the debt to GLC constitutes a debt for fraud or defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).[5]

### IV.

For the foregoing reasons, the court will enter a separate order and judgment granting the plaintiff's motion for summary judgment.

# # #

---

[4] Although the Consent Judgment the debtor signed does not have preclusive effect since it had not become final at the time the bankruptcy petition was filed, Ga. Code Ann. § 5-6-38(a) (notice of appeal must be filed within 30 days after entry of judgment); *In re Bagley*, 522 S.E.2d 281, 283 (Ga. Ct. App. 1999) (*res judicata* and collateral estoppel apply only if judgment is final; "judgment is not final as long as there is a right to appellate review.") (citation omitted), it does constitute an admission by the debtor.

[5] For this reason, the court need not address whether the debtor's conduct also constitutes embezzlement or larceny, 11 U.S.C. § 523(a)(4), or the debt was a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity," *id.* § 523(a)(6).